IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| METROPOLITAN OMAHA PROPERTY OWNERS ASSOCIATION, INC. and ROOSEVELT LEE, | ) ) ) | Case No. |
| Plaintiffs, | ) ) ) | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL TRIAL IN OMAHA, NEBRASKA** |
| vs. | ) ) | |
| THE CITY OF OMAHA, JEAN STOTHERT, in her individual and official capacity, JAY DAVIS, in his individual and official capacity, PAUL KRATZ, in his individual and official capacity, JANE DOES, and JOHN DOES, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs submit the following Complaint against the Defendants:

**<u>INTRODUCTION</u>**

1.      Plaintiffs ask this Court to declare the City of Omaha[1] Vacant and Abandoned Property Ordinance ("the VAPO") unconstitutional and void on various grounds.[2]  The VAPO stems from an unlawful scheme to undermine and circumvent a Consent Decree entered by this Court in *Metropolitan Omaha Property Owners Association, Inc. v City of Omaha*, at Case No. 8:13-cv-00230-LSC-FGS ("Consent Decree").  The Consent Decree implemented drastic changes, safeguards, due process requirements, new and/or revised ordinances, and uniform policies and procedures to end the City's long-standing arbitrary, discriminatory, and abusive property code enforcement practices.

---

[1] The City of Omaha will be referred to throughout this Complaint as "the City."
[2] The VAPO is codified in the Omaha Municipal Code at §§ 48-141 - 48-162.

2.      The VAPO nullifies the impact and effect of the Consent Decree and restores and grossly

expands the unlawful powers, policies, actions, and laws that were amended, rescinded,

and/or vacated by the Consent Decree.

3.      The VAPO also imposes an unlawful tax of up to more than $2,000 per year, disguised as

a registration fee, even though the City does not provide any corresponding benefit or

service.  Such a tax is unconstitutional because the Nebraska Legislature has not vested

the City with the power or authority to assess or impose a tax on abandoned or neglected

property.

## JURISDICTION AND VENUE

4.      Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1343(a)(1)(2)(3) and (4), 28

U.S.C. § 1331, and the pendent and supplemental jurisdiction of this Court pursuant to 28

U.S.C. § 1367.  This action is authorized and instituted pursuant to 42 U.S.C. § 3613, 42

U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Fourth,

Fifth, and Fourteenth Amendments to the United States Constitution, and this Court's

inherent power to enforce its own Orders, Judgments, and Decrees.

5.      This Court has personal jurisdiction over the Defendants and venue is proper under 28

U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because the Defendants reside in this

district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this

district.

## PARTIES

6.      Plaintiff Metropolitan Omaha Property Owners Association, Inc. ("MOPOA") is a

Nebraska Nonprofit Corporation.  MOPOA is made up of approximately 1,000

individuals and entities that own and operate real property located in Omaha, Nebraska

and act as landlords.  Some of MOPOA's members are protected class members and minorities.  Some of MOPOA's members provide rental housing services to protected class members and minorities.

7.  Plaintiff Roosevelt Lee ("Lee") is an African American male, who resides in and owns real property in Omaha, Douglas County, Nebraska.  Lee is a member of a protected class.  Lee is a member of MOPOA.

8.  Defendant the City of Omaha, Nebraska (hereinafter the "City") is a political subdivision of the State of Nebraska.  The City, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by the City being granted power to act under the color of state law.

9.  Defendant Jean Stothert ("Stothert") is an individual residing in Douglas County, Nebraska and a citizen of the United States of America.  Stothert is the Mayor of the City.

10.  Defendant Jay Davis ("Davis") is an individual, upon information and belief, residing in Sarpy County, Nebraska and a citizen of the United States of America.  Davis was, at all relevant times, the Superintendent of the Building and Development Division of the City.

11.  Defendant Paul Kratz ("Kratz") is an individual, upon information and belief, residing in Douglas County, Nebraska and a citizen of the United States of America.  Kratz is the Omaha City Attorney.

12.  On certain occasions relevant hereto, Stothert, Davis, and Kratz were acting under the color of state law, and some of the acts complained of and the wrongs committed were made possible by Stothert, Davis, and/or Kratz being granted power to act under the color of state law by the City.  Stothert, Davis, and Kratz have acted in concert with, in

conjunction with, and conspired with the other Defendants, to violate and circumvent the Orders and Decrees of this Court and the constitutional and other rights of Plaintiffs and other class members.

13.     Defendants Jane and John Does are individuals that have yet to be discovered or identified who acted in concert with, in conjunction with, and conspired with some or all of the Defendants to circumvent and violate the Orders and Decrees of this Court and Plaintiffs, and other class members' constitutional and other rights.  It is anticipated that some of the Jane and John Does will be agents and representatives of the City, including code inspectors, attorneys, and police officers that trespassed upon and conducted illegal searches and seizures of the real property of members of the class.

## CLASS CERTIFICATION JUSTIFICATION

14.     Plaintiffs bring this action on their own behalves, on behalf of the members of MOPOA, and on behalf of other similarly situated individuals and entities.  Pursuant to F.R.C.P. 23, the class that the Plaintiffs seek to represent consists of:

All property owners, landlords, and other persons or entities who:

a.   have been subjected to violations of their real property, civil, or constitutional rights by the Defendants, acting under the provisions or guise of the VAPO;

b.   have been forced to pay registration fees or other penalties under the VAPO;

c.   have had their properties been deemed vacant, abandoned, or neglected under the VAPO;

d.   have been threatened, coerced, intimidated, punished, fined, or imprisoned by Defendants pursuant to the VAPO;

e.   have had their real property held, encumbered, liened, assessed, restricted, or taken pursuant to the VAPO; and

4

f.  have been threatened, intimidated, coerced, punished, imprisoned, had their property taken or held in a condemned or violation status, or been subjected to the provisions of the VAPO because they are minority or protected class members; or

g.  have been threatened, intimidated, coerced, punished, imprisoned, had their property taken or held in a condemned or violation status, or been subjected to the provisions of the VAPO because they rent, rented, provide, or provided housing to minority tenants.

15.  There are questions of law and fact common to all members of the class, including:

a.  Whether the VAPO violates, circumvents, and undercuts the Consent Decree, Omaha's own policies and procedures, and other provisions of the Omaha Municipal Code;

b.  Whether the VAPO is, in effect, an unconstitutional and unlawful tax;

c.  Whether Defendants may constitutionally delegate the ability to make housing law to code inspectors and other persons;

d.  Whether the VAPO violates the Fair Housing Act;

e.  Whether the VAPO is unconstitutional; and

f.  Whether the VAPO, and the actions of Defendants in its adoption and enforcement, result in the deprivation of rights, benefits, and privileges guaranteed by the Constitutions of the United States and the State of Nebraska.

16.  The number of persons in the class Plaintiffs seek to represent is estimated to be approximately 50,000 or more.  The class is therefore so numerous that joinder of all members is clearly impracticable.  Plaintiffs, including the 1,000 or so members of MOPOA, are typical of other members of the class who rely upon the protections and safeguards of the Consent Decree and have been, or could be, subjected to the same deprivation of their State and Federal Constitutional rights.  MOPOA filed suit in this Court and negotiated the terms of the Consent Decree.  Consequently, MOPOA is in a unique position and is the ideal party to enforce the provisions of the Consent Decree on

behalf of all members of the class. Plaintiffs can fairly and adequately protect the interests of the class.

17. Plaintiffs have no interests antagonistic to other members of the class related to the subject matter of this lawsuit.

18. Plaintiffs' attorneys are experienced in representing litigants in various Federal Courts, have prosecuted and defended civil rights cases, and have prosecuted actions against various government entities, including the United States of America and the City on numerous occasions. Plaintiffs' attorneys represented MOPOA in the suit that led to the Consent Decree. Plaintiffs' attorneys are, therefore, well-qualified to serve as class counsel and will competently and vigorously prosecute this action.

19. Prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the class and inconsistent interpretation and enforcement of the VAPO. Many of the individual class members would not have the resources, ability, or willingness to assert claims against the City individually.

20. Defendants have acted or refused to act on grounds that apply generally to the class. The Consent Decree was specifically adopted to result in changes to the Omaha Municipal Code and for the City to adopt uniform policies and procedures related to property maintenance and code enforcement. Defendants have failed to abide by the provisions of the Consent Decree, failed to follow their uniform policies and procedures, and, through the adoption of the VAPO, have reverted to property maintenance and code enforcement practices that are arbitrary, discriminatory, and not subject to any identifying standards.

The declaratory and injunctive relief requested is appropriate with respect to the class as a whole.

## FACTS AND BACKGROUND

21.    Since prior to 2003, the City has engaged in a pattern, practice, and custom of the underlying conduct and property maintenance code enforcement abuses similar to those giving rise to Plaintiffs' injuries.

22.    On July 31, 2013, a class action lawsuit entitled *Metropolitan Omaha Property Owners Association, Inc. v. City of Omaha*, Case No. 8:13-cv-00230-LSC-FGS, was brought before this Court by MOPOA against the City and several of its agents, including property code inspectors ("the Class Action Suit").

23.    The Class Action Suit was brought because the City's previous housing code had no uniformity, consistency, or standard operating procedures, fostered gross abuses, arbitrary and discriminatory enforcement, and violations of constitutional, civil, and other rights, and deprived property owners of adequate due process, safeguards, notice, protections, and any meaningful opportunity to challenge or appeal.

24.    The Class Action Suit was brought: 1) to stop the unlawful interference of real property and other constitutionally protected rights of law-abiding property owners by those acting under the guise of housing code enforcement; 2) to stop the City's pattern and practice of imposing financial hardship upon property owners, forcing sales of properties, and making it cost prohibitive for property owners to provide affordable, quality housing to lower income families through the assessment of never-ending, fabricated, discriminatory, nonsensical, and irrational housing code violations; 3) to stop the coercion, intimidation, threats, discrimination, and penalties utilized and imposed by the

City; 4) to implement fair and adequate procedures that ensure due process and the prompt review of housing code enforcement actions before an impartial tribunal; 5) to ensure notice and an opportunity to cure or defend against allegations before a property could be inspected, placed in a violation status, penalized, or shut down; 6) to prevent the unlawful searches and seizures formerly authorized by the Omaha Municipal Code; and 7) to implement rational, written, and clear housing laws, rules, regulations, and standards and the uniform, fair, and nondiscriminatory interpretation and enforcement of the same.

25.    The City settled the Class Action Suit in approximately March of 2015 and agreed to adopt uniform Policies and Procedures, amend various provisions of the Omaha Municipal Code, and create a Property Maintenance Appeals Board for appealing and contesting alleged property code violations or issues.

26.    Davis was actively and continuously involved in the creation, negotiations, discussions, and drafting of the settlement terms, including the uniform Policies and Procedures and amendments to the Omaha Municipal Code, which were memorialized into a Settlement Agreement approved by the City Council and signed by Stothert.

27.    This Court adopted and implemented the Settlement Agreement through a Consent Decree approved on March 4, 2015.  (Class Action Suit, 8:13-cv-00230 at Doc. # 36). This Court ordered, among other things, "This Consent Decree incorporates and orders the Parties to implement the terms and conditions of the Settlement Agreement and Release."  (Class Action Suit, 8:13-cv-00230 at Doc. # 36).

28.    The protections and safeguards specifically bargained for by MOPOA and implemented by the Consent Decree, included, among other things: 1) the City could only act

8

regarding a property in response to a valid complaint taken in accordance with specific requirements; 2) the City was required to attempt to provide immediate notice to the property owner of any complaints or actions intended to be taken by the City; 3) the City could not inspect a property without consent of the owner or a search warrant; 4) the elimination of the code inspectors or others' authority to interpret and/or make housing laws and procedures; 5) the elimination of the provision making it a separate crime for each day a property violation existed; 6) the shift of the burden to the City to prove a property violation as the burden was previously on the property owner to disprove a violation; and 7) the City is now required to furnish a notice detailing, among other things, the specific violations alleged, a reasonable time to make repairs, and inform the property owner of the right to, manner of, and deadline to appeal.

29. City officials, including Stothert, have publicly expressed their dissatisfaction with the Consent Decree. As time has passed since the entry of the Consent Decree, the Defendants have increasingly ignored, violated, and sought to undermine, circumvent, and thwart the protections, due process requirements, and safeguards of the Consent Decree and reverted back to their previous code enforcement practices, which were unlawful, discriminatory, and abusive.

30. Stothert has openly expressed her and the City's law department efforts to "work around" the Consent Decree.

31. To further their concerted efforts and conspiracy to undermine the Consent Decree, the Defendants created and adopted the VAPO on November 17, 2015, which became effective on December 2, 2015.

32.     The VAPO was specifically designed to, does, and can, circumvent and undermine the provisions, protections, and due process requirements of the Consent Decree.

33.     The VAPO is completely unnecessary because the City already has the procedures, tools, policies, and laws in place to combat, deal with, rectify, and eliminate vacant, abandoned, or neglected housing, including under Omaha Municipal Code Chapters 37 (Trees and Vegetation), 43 (Building), 48 (Property Maintenance), and 54 (Swimming Pools).

34.     The City negotiated for and was able to maintain broad power to deal with such issues, subject to due process, uniform application, and other safeguards, pursuant to the Consent Decree.

35.     Section 48-72 of the Property Maintenance Code specifically empowers the City to deal with vacant structures and those responsible for leaving vacant structures in place:

> If the premises are vacant and unfit for human habitation and occupancy, the code official is authorized to post a closure placard on the premises and order the premises closed up so as not to be an attractive nuisance. The owner or person responsible for the premises shall close up the premises within the time specified in the notice or order, and shall keep the premises closed until authorized or permitted by the code official to be opened. It shall be unlawful for the owner or any person responsible for the premises to fail to close and keep closed such a premises, on a continuing basis after the said notice or order. Upon failure of the owner or other person responsible for the premises to close up the premises within the time specified in the order, the code official may, in addition to other civil or criminal remedies, cause the premises to be closed and secured through any available public agency or by contract or arrangement by private persons and the cost thereof shall be charged against the real estate upon which the premises are located and shall be a lien upon such real estate and may be collected by any other legal means.

36.     The VAPO significantly expanded the qualification for "vacant" defined by the Consent Decree from "any property that is clearly vacant, open and vandalized" to "any property on which no building or structure exists thereon that exhibits evidence of vagrancy or is

10

not legally occupied." (Class Action Suit, 8:13-cv-00230 at Doc. # 35-2, Pg. 20; § 48-146(p)).

37.     Before the VAPO, if the City desired to take any action against a property, property owner, or other person regarding a vacant or abandoned house or any other maintenance or code issue, it needed to comply with the due process requirements, safeguards, and protections implemented by the Consent Decree.

38.     In effect, Defendants conspired to and created a new set of ordinances within the VAPO to permit them to enforce the Omaha Municipal Code related to building maintenance (Chapter 43) and property maintenance (Chapter 48) so they could bypass the safeguards, protections, and due process provisions of the Consent Decree, that were specifically adopted to exclusively govern issues arising under those Chapters, including property and building maintenance.

39.     The following comparison chart depicts some specific examples of how the City opted to create new ordinances under the VAPO to undermine and override the more restrictive and/or contrary provisions implemented by the Consent Decree:

| Ordinance | Provision |
|---|---|
| VAPO Sec. 48-145. - Inspection of property; enforcement. | The superintendent of the permits and inspection division ("building official") or their designated representative(s) are authorized to investigate and enforce this division and are hereby authorized and directed to make complaint-initiated inspections to determine the condition of property located within the city or within the three-mile extraterritorial jurisdiction in order to perform the duty of safeguarding the health, safety and welfare of the general public and in order to ascertain that property as described and addressed in this division is registered and maintained as required herein. |
| VAPO Sec. 48-157. - Reinspection. | The building official or designated representatives may periodically reinspect abandoned real property or neglected buildings to ensure compliance with this chapter and all applicable court or administrative orders. |
| **Contrary To:** | |
| CONSENT DECREE Sec. 18-7. - Right of entry. | For the purpose of administering and enforcing the provisions of this chapter, the planning director, chief of police, parks, recreation and public property director, and/or other officer duly designated by the mayor and any other officer or |

| | employee of the city under his supervision and/or health officer of the county health department shall have the right to enter the exterior areas of any property in the city or its extraterritorial jurisdiction at reasonable times subject to constitutional restrictions on unreasonable searches and seizures. Such official may enter the interior common area of a multi-unit structure for purposes of knocking on or otherwise accessing the exterior of the door of a unit contained therein. Such officer may enter the interior of a structure or unit thereof for purposes of inspection or enforcement of this chapter at any reasonable time, provided, that consent is obtained from the owner or occupant, or there is an emergency involving imminent risk to life or safety, or a search warrant, inspection warrant, or other authorizing court order is obtained. If entry is refused or not obtained, the said officer is authorized to pursue recourse as provided by law. |
|---|---|
| **CONSENT DECREE Sec. 48-34. - Right of entry.** | (a)  The code official is authorized to enter the exterior areas of any property in the city or its extraterritorial jurisdiction at reasonable times for purposes of inspection under this chapter, subject to constitutional restrictions on unreasonable searches and seizures. <br><br> (b)  The code official may enter the interior common area of a multi-unit structure for purposes of knocking on or otherwise accessing the exterior of the door of a unit contained therein. <br><br> (c)  The code official may enter the interior of a structure or unit thereof for purposes of inspection under this chapter at any reasonable time, provided, that consent is obtained from the owner or occupant, or there is an emergency involving imminent risk to life or safety, or a search warrant, inspection warrant, or other authorizing court order is obtained. If the owner has registered pursuant to section 48-33(b), the code official shall comply with that section prior to inspection. If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law. |

| Ordinance | Provision |
|---|---|
| **VAPO Sec. 48-161. - Criminal violations; penalties.** | Any responsible party upon whom a duty is placed by the provisions of this division who shall fail, neglect, or refuse to perform such duty, or who shall violate a provision of this title shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not to exceed $500.00 or be imprisoned in the county jail for a period not to exceed six months, or both, except that each person so convicted shall be fined in a sum of not less than $200.00 for the first offense, not less than $300.00 for a second offense, and not less than $400.00 for the third offense and each offense thereafter. The penalty herein provided shall be cumulative with and in addition to the revocation, cancellation, or forfeiture of any license, permit, or right elsewhere provided for or as provided by law. Each day that a violation of this title continues shall constitute a separate and distinct offense and shall be punishable as such. |

| VAPO Sec. 48-148(b)(8)(e). - Registration of abandoned real properties, neglected buildings or vacant parcels. | In the event a registration is denied, the building official shall refer the matter to the city attorney for consideration of further action. The city attorney may take any reasonable action necessary to enforce this chapter. |
|---|---|
| **Contrary To:** | |
| CONSENT DECREE Sec. 48-53. - Prosecution of violation. | Any person who knowingly fails to comply with a section of this code or with a notice of violation or order served in accordance with this code for a period of at least 90 days after such service shall be deemed guilty of a misdemeanor and be punished as provided in section 1-10 of the Omaha Municipal Code. The filing or pendency of an appeal under this code shall not stay the criminal prosecution of any violation. If the notice of violation is not complied with, the code official may also, in addition to the penalties set out in section 1-10 of this Code, institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, or to require the removal or termination of the unlawful occupancy of the structure in violation of the provisions of this code or of the order or direction made pursuant thereto. |

| Ordinance | Provision |
|---|---|
| VAPO Sec. 48-148. - Registration of abandoned real properties, neglected buildings or vacant parcels. | The responsible party for abandoned real property, a neglected building or vacant parcel shall be required, after written notification from the permits and inspection division, to register such abandoned real property, neglected building or vacant parcel with the permits and inspection division within 30 days of the date of the notice from the permits and inspection division. In the event the responsible party undertakes and completes the necessary maintenance and security measures such that the property no longer requires registration under this division within 30 days of the date of the notice from the permits and inspections division, notifies the building official of the actions taken pursuant to this section and the building official verifies the property no longer meets the requirements for registration, then registration will not be required. Written notification required herein and sent pursuant to section 48-63 shall be deemed good service. If the responsible party resides outside the City of Omaha, such notice shall be sent by regular first class U. S. mail to the last known address of the responsible party and shall be deemed good service upon deposit with the United States Postal Service. Service on a property manager shall be deemed good service on the responsible party. |
| **Contrary To:** | |
| Consent Decree Sec. 48-62. - Form. | Such notice prescribed in section 48-61 shall be in accordance with all of the following:<br><br>(1) Be in writing.<br><br>(2) Include a description of the real estate sufficient for identification.<br><br>(3) Include a specific statement of all violations presently known, including the code sections violated. |

| | (4) Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code. Ordinarily the said "reasonable time" for a notice of violation shall be the periods prescribed in Table 48-62(4) below, but such time can be increased or decreased if reasonable in light of the health or safety concerns presented by the violation. The time for repair shall be calculated in the same manner as the time for appeal under this chapter.<br><br>(5) Describe the nature of all permits an owner must obtain to repair the property.<br><br>(6) Inform the property owner of the right to, and manner of, appeal. |
|---|---|

TABLE 48-62(4)

| Level | Description | Days allowed for repair in initial notice | Additional days allowed for extension granted by inspector | Additional days allowed for extension granted by superintendent of permits and inspections division |
|---|---|---|---|---|
| 1 | Structural/fire/severe storm damage | 30 | 30 | 30 |
| 2 | Interior/mold/mechanical, plumbing, or electrical | 30 | 30 | 30 |
| 3 | Interior/drywall repair/paint | 60 | 30 | 30 |
| 4 | Exterior/paint/glazing/sidewalks | 90 | 30 | 120 |

| Code | Provision |
|---|---|
| **Sec. 48-156. - Registration penalty; lien on property; assessment process.** | If a building continues to meet the definition of abandoned real property or a neglected building for a period of more than 90 calendar days after notice is given, or has been registered, and the owner fails or refuses to register or re-register the abandoned real property or neglected building after the initial registration expires, or if the city has not been reimbursed for any portion of registration fees paid by the city, or an assessed civil penalty is not paid, the building official shall continue to assess a penalty of $500.00 for each 90-calendar-day period, or portion thereof, the abandoned real property or neglected building continues to be unregistered or the registration fees or civil penalties are not paid. At no time shall the amount of unreimbursed registration fees, civil penalties, and assessments exceed $4,000.00 per property or structure in a calendar year, but shall be cumulative in following years. The building official, |

14

| | upon approval by the property maintenance appeals board, may reduce, waive, or stay the imposition of a civil penalty herein for good cause shown by the responsible party in efforts to comply with this section or an approved plan. |
|---|---|
| **Contrary To:** | |
| **Sec. 48-103. - Burden of proof.** | On appeal, the code official must first produce evidence substantiating the decision, notice or order at issue. If the board determines the code official has met this burden, then the appealing party must show why the decision, notice or order should be rescinded or modified, or why a requirement of the code should be waived. On all issues except for the removal of tenants and demolition orders, the appeal is denied unless a majority of the board votes to reverse, rescind, modify or waive. Orders to remove tenants or to demolish a building or structure must be sustained by majority vote. |

40.     Through the VAPO, the Defendants have contemptuously reverted back to the old, discriminatory, unconstitutional, and arbitrary code enforcement practices eliminated by the Consent Decree.  The Defendants have restored ***and greatly expanded*** the unlawful powers, policies, actions, and laws that were amended, rescinded, and/or vacated by the Consent Decree.

41.     The VAPO also contains provisions that are inconsistent with, incompatible with, and contrary to various other provisions of the Omaha Municipal Code regarding the same or similar matters.  As one additional example, the VAPO completely undermines and effectively nullifies the grandfather protections of the Property Maintenance Code and the Consent Decree, including those expressly prohibiting the City from declaring a property abandoned because of pre-existing conditions that are "not dangerous to life." Section § 48-12 provides, in relevant part:

> ***An applicable code*** shall not require the removal, alteration or ***abandonment*** of, nor prevent the continued utilization and maintenance of, an existing mechanical and plumbing system ***or other condition lawfully in existence at the time the applicable code was adopted, provided such continual use is not dangerous to life***.  (§ 48-12(b); Class Action Suit, 8:13-cv-00230 at Doc. # 35-2, Pg. 24) (emphasis added).

15

42.    The VAPO eliminates those protections and unlawfully seeks to vest the City with the authority to arbitrarily declare a property abandoned without regard to the grandfather protections, whether the conditions were pre-existing, or whether continued use would be dangerous to life.

43.    The VAPO is further arbitrary and unworkable in practice because it contains definitions that are different from, inconsistent with, contrary to, and more expansive than the same or similar terms implemented by the Consent Decree or found elsewhere in the Omaha Municipal Code or the Nebraska Landlord Tenant Act.  For example, the definitions of "property manager" (§ 48-146(l) and "[property] owner" (§ 48-146) in the VAPO are different from and more expansive from the same terms defined by the Policies and Procedures implemented by the Consent Decree.  (Class Action Suit, 8:13-cv-00230 at Doc. # 35-2, Pg. 18).

44.    The VAPO further expands the scope of those who could be responsible for code violations and imposes affirmative duties upon parties beyond the owner and landlord, including responsible parties (§ 48-146(m), mortgagees (§ 48-151), and property managers (§ 48-154)).

45.    The VAPO is broad and all-encompassing and purports to empower the City to act upon *any* housing or property code violation.

46.    The VAPO is so arbitrary and irrational that it permits the City to designate a property that is, in fact, not vacant or abandoned to be vacant and/or abandoned.

47.    The VAPO's reach is virtually limitless because it permits the City to regulate, impose maintenance requirements, engage in code enforcement, and issue penalties, assessments, foreclosure, and criminal citations and imprisonment under the VAPO for purported

16

violations of seemingly every provision of the Omaha Municipal Code "and other local, state or federal law, rule or regulation." (§ 48-151(e)). The vast expansion of the City's regulatory powers regarding property and building codes can now be indiscriminately and arbitrarily exercised without the checks, balances, restrictions, due process requirements, safeguards, and protections implemented by the Consent Decree.

48.     Motivated by a discriminatory intent and desire to undermine and circumvent the provisions and protections the Consent Decree, Defendants have conspired to utilize and have utilized the VAPO to, among other things, 1) interfere with and violate the real property, due process, equal protection, and other guaranteed rights and privileges of the Plaintiffs, and other class members; 2) impose undue hardship and burdens upon property owners and make it cost prohibitive to provide affordable, quality housing to lower income families; 3) coerce, intimate, threaten, discriminate against, and penalize property owners; and 4) conduct unlawful searches, seizures, and inspections.

49.     Lee has specifically had his rights violated by the Defendants operating under the guise of the VAPO.

50.     Lee is the owner of a single-family residence located at 4543 Hamilton Street in Omaha that he utilizes for rental ("the Lee Property").

51.     In or around 2018, the Lee Property was deemed to fall under the VAPO by the City. This designation was done contrary to the provisions of the Consent Decree adopted for the very purpose of preventing the City from violating the rights of landlords and property owners through the submittal or fabrication of purported complaints by third parties or the City itself.

17

52. The City's Policies and Procedures, as implemented by the Consent Decree, provide, in

pertinent part:

> Complaints will be taken on the main telephone number 402-444-5371
> during normal business hours. Complaints may also be emailed to the
> counter staff by way of the Mayor's Hotline. All complaints must contain
> the name and phone number of the complaint for the file. (This is a result
> of a 2003 Federal Consent Decree.) All complaints must include the
> address of the complaint and the nature of the complaint. The identity of
> the complaint shall be disclosed to the property owner or his designee
> upon request. The complainant will be asked the following questions: (a)
> "Have you received a written eviction notice?" and (b) "Has the landlord
> been provided 14 days to correct deficiencies?" This information will be
> for internal use only to determine future educational programs and related
> raining materials for inspectors, tenants and property owners. The answers
> to these questions shall be disclosed to the property owner or his/her
> designee upon request. (Class Action Suit, 8:13-cv-00230 at Doc. # 35-2,
> Pg. 20).

53. Davis designated the Lee Property under the VAPO even though he knew, or should have

known, that the City had no authority or ability to do so because the safeguards and due

process requirements of the Consent Decree had not been fulfilled.

54. The City, through its agents and representatives, have admitted that it has no authority to

act on anything other than a valid complaint taken in accordance with the provisions of

the Consent Decree.  Scott Lane, the City's Chief Housing Inspector, has stated, among

other things, on September 26, 2018: "Under a federal court order the city cannot act on a

code violation complaint without the name and contact information of the person making

the complaint."

55. No valid or actionable complaint was made against the Lee Property.  No complaints

were taken on the main telephone number, 402-444-5371, during normal business hours

or emailed to the counter staff by way of the Mayor's Hotline.  No complaints were

submitted, let alone, any that listed the name, address, or telephone number of any

18

complainant.  Since there were no complainants, no one was ever asked whether they had

ever received a written eviction notice or provided Lee 14 days to correct any purported

deficiencies.

56.    Defendants further failed to provide any valid notice to Lee, or even attempt to do so,

before deeming the Lee Property to be abandoned and/or vacant and placing it on the

VAPO registration.  These actions undermine the Consent Decree, which requires that:

> The code official shall make a good faith effort to communicate with the
> owner of a property or his or her authorized agent, in person or by
> telephone (or by electronic mail, if requested by the owner), prior to
> inspecting or reinspecting a building or structure."  (Omaha Municipal
> Code § 48-33(b); the Class Action Suit, 8:13-cv-00230 at Doc. # 35-2, Pg.
> 10).

57.    Defendants further failed to provide the appropriate notices to Lee in the form prescribed

by § 48-62 and implemented by the Consent Decree, specifying the conditions or

purported defects that caused the Lee Property to be deemed abandoned and/or vacant.[3]

58.    Lee was not provided any notice setting forth any purported problems or code violations

that led to the VAPO designation, a reasonable opportunity to cure, the permits needed to

be obtained, or the right, manner, or deadline for appealing or contesting the VAPO

designation.

59.    Defendants, including Davis and other agents and co-conspirators, have utilized the cloak

of the VAPO to, among other things: 1) circumvent, undermine, and violate the due

process and other rights guaranteed to Lee, including under the Consent Decree and other

---

[3] The Table is set forth in the comparison chart included previously in this Complaint.
(Omaha Municipal Code § 48-62; Class Action Suit, 8:13-cv-00230 at Doc. # 35-2, Pg.
12-13).

provisions of the Omaha Municipal Code; and 2) encumber, assess, restrict, and interfere with Lee's property rights and interests.

## FIRST CLAIM FOR RELIEF: APPLICATION FOR
## CONTEMPT/BREACH OF CONSENT DECREE

60.     Plaintiffs incorporate the foregoing allegations by reference.

61.     MOPOA was a party and signatory to the Consent Decree.

62.     Lee, at all relevant times, has been a member of MOPOA.  Lee was a member of the class represented in the Class Action Suit and is and was an intended beneficiary of the Consent Decree.

63.     The Defendants have violated and/or aided and abetted violations of the Consent Decree by, among other things: 1) actively conspiring to thwart, circumvent, undermine, and violate the Consent Decree, including through the creation, adoption, and enforcement of the VAPO; 2) thwarting, circumventing, undermining, and violating the Consent Decree, including through the creation, adoption, and enforcement of the VAPO; 3) effectively nullifying and eliminating protections, due process requirements, and safeguards implemented by the Consent Decree; 4) restoring and grossly expanding unlawful powers, policies, actions, and laws that were amended, rescinded, and/or vacated by the Consent Decree; and 5) reverting to the old, discriminatory, unconstitutional, and arbitrary code enforcement practices that were challenged by the Class Action Suit and prohibited by the Consent Decree.

64.     The injuries and damages bestowed upon Plaintiffs, and other class members, would have been avoided had the Defendants simply respected and abided by the terms and provisions of the Consent Decree.

65.   Defendants' conduct was and remains calculated, willful, ongoing, malicious, and warrants severe coercive and remedial sanctions.

66.   As a direct and proximate result of the Defendants' actions, Plaintiffs, and other class members, have suffered and will continue to suffer injuries and damages, including the following:

- deprivation of civil and other rights guaranteed by the Constitution of the United States, the Nebraska Constitution, and State and Federal law;
- unlawful assessment and imposition of fees, assessments, taxes, and other penalties imposed under the guise of the VAPO;
- interference with, taking of, and damage to property rights and interests;
- illegal searches, seizures, and trespasses upon their real property and homes; and
- lost business and revenues.

**SECOND CLAIM FOR RELIEF: UNLAWFUL AND UNCONSTITUTIONAL TAX**

67.   The foregoing paragraphs are incorporated herein by reference.

68.   The VAPO amounts to and implements an unconstitutional and unlawful tax under the false guise of a registration fee.

69.   Section 48-149 provides:

> A registration fee of $500.00 per abandoned real property or neglected building shall be collected from the responsible party, at the time of registration, by the permits and inspection division. In the event the city registers or re-registers abandoned real property or a neglected building, the registration fee shall be paid by the city and shall be a cost for which the responsible party is liable and shall become a lien on the premises. Accrual of reimbursable registration fees shall be separate from and in addition to any civil penalties permitted in this chapter. Once registered, a new fee of $500.00 shall be due and payable for each additional 90-day period thereafter, or portion thereof, as though registered for the first time, until the building is removed from the list or such fee is reduced or waived by the building official, as provided for herein. Fees for the initial 90-day period and each additional 90-day period shall become a lien on the premises, as well as a liability of the responsible party.

70.   In effect, the VAPO imposes a tax upon properties that the City deems to be abandoned or neglected in violation of the Nebraska Constitution.

21

71.    The Nebraska Legislature has plenary control over all municipalities.  Consequently, the City possesses only the taxing power specifically granted by the Nebraska Legislature and may only levy taxes (regardless of how they are labeled) for purposes authorized by statute.

72.    The City has not been vested with the power to assess or impose a tax on abandoned or neglected property and no such authority is found within the language of the VAPO.

73.    The purported "registration" fees and other penalties imposed by the VAPO are purely revenue generating.  The VAPO has no legitimate, rational, or necessary purpose as the City already has laws and procedures in place to adequately redress abandoned or vacant property under the expansive provisions of the Omaha Municipal Code, including Chapters 37 (Trees and Vegetation), 43 (Building), 48 (Property Maintenance), and 54 (Swimming Pools).

74.    The purported "registration" fees and other penalties imposed by the VAPO are not reasonably proportionate to any direct and/or indirect cost of providing any services.  The City effectively provides little, to no, services in return for the initial registration fee of $500 and the more than $2,000 annual charge for a property deemed to be abandoned or neglected.

75.    The VAPO does not establish the intended purpose, use, or disposition of the revenues derived from its "registration" fees and other penalties.  The City has no need to incur any additional costs to implement the provisions of the VAPO because it already provides services for property maintenance and property code enforcement through other provisions of the Omaha Municipal Code specifically intended for those purposes.

22

76.    The "registration" fees and other penalties imposed by the VAPO are further arbitrary, onerous, oppressive, and unreasonable.  On its face, the VAPO is designed and intended to be confiscatory.  The "registration" fees and other penalties will ultimately lead to a lien on the subject property pursuant to §§ 48-149 and 48-156(e) & (h) and foreclosure pursuant to § 48-156(h).

77.    Because the VAPO is implemented through and dependent upon a disguised and arbitrary tax that the City has no power to impose or collect, the VAPO is unconstitutional.

**THIRD CLAIM FOR RELIEF: ILLEGAL COLLECTION OF UNLAWFUL AND UNCONSTITUTIONAL TAX**

78.    The foregoing paragraphs are incorporated herein by reference.

79.    In addition to the allegations set forth in Plaintiffs' Second Claim for Relief, the "registration" fees and other penalties of the VAPO are being imposed in violation of the Consent Decree and the due process, notice, and other safeguards set forth therein.

80.    The City cannot be permitted to enrich itself by disregarding the Consent Decree and the due process rights of the Plaintiffs and other class members.

81.    The "registration" fees and other penalties are discriminatory towards non-whites and have had and will continue to have a disparate impact upon non-white and minorities compared to the relevant Omaha population.

82.    The "registration" fees and other penalties, as applied to the Plaintiffs, and other class members, amount to illegal fines, unlawful takings, and violations of the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution.

83.    As a direct and proximate result of the City's unconstitutional collection of "registration" fees and other penalties imposed by the VAPO, Plaintiffs, and other class members, have

suffered and will continue to suffer irreparable harm to their property, due process, and other rights.

84.     Plaintiffs, and other class members, who have paid "registration" fees and other penalties imposed by the VAPO are entitled to full restitution of the same with interest.

### FOURTH CLAIM FOR RELIEF: VIOLATIONS OF THE FAIR HOUSING ACT

85.     The foregoing paragraphs are incorporated herein by reference.

86.     42 U.S.C. § 3617 states as follows:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

87.     Lee, certain members of MOPOA, and other class members are and/or were members of a protected class and minorities.

88.     Lee, certain members of MOPOA, and other class members are and/or were property owners and/or landlords providing housing to minorities and other protected class tenants in the City.

89.     Defendants' actions, and the VAPO, were designed to and have coerced, intimidated, threatened, punished, and interfered with Lee, certain members of MOPOA, and other class members on account of their exercised or enjoyed rights granted and provided by the Fair Housing Act.

90.     Defendants' actions, and the VAPO, were designed to and have coerced, intimidated, threatened, punished, and interfered with Lee, certain members of MOPOA, and other class members on account of their having aided or encouraged persons and tenants in the exercise or enjoyment of rights granted and provided by the Fair Housing Act.

24

91.    Defendants' actions and enforcement policies are discriminatory towards nonwhites, including refugees and other minorities, and are based upon a discriminatory intent. Defendants recently evicted and eliminated affordable housing for approximately 500 refugee tenants from Myanmar.

92.    Defendants' actions and practices unquestionably have had a disparate impact upon refugees and minority tenants compared to the relevant Omaha population.

93.    As a direct and proximate result of the Defendants' actions, Plaintiffs have suffered and will continue to suffer injuries and damages, including those mentioned elsewhere in this Complaint.

**FIFTH CLAIM FOR RELIEF: DECLARATORY RELIEF DECLARING THE VAPO UNCONSTITUTIONAL**

94.    The foregoing paragraphs are incorporated herein by reference.

95.    As thoroughly discussed throughout this Complaint, the VAPO, in its entirety, is unconstitutional, unlawful, and should be declared invalid for various reasons.  The VAPO is also comprised of specific Sections that are unconstitutional on their face, and as applied to Plaintiffs and other class members, for additional reasons addressed below:

> **Sec. 48-145. Inspection of property; enforcement.**
>
> The superintendent of the permits and inspection division ("building official") or their designated representative(s) are authorized to investigate and enforce this division and are hereby authorized and directed to make complaint-initiated inspections to determine the condition of property located within the city or within the three-mile extraterritorial jurisdiction in order to perform the duty of safeguarding the health, safety and welfare of the general public and in order to ascertain that property as described and addressed in this division is registered and maintained as required herein.
>
> **Sec. 48-148(a). Registration of abandoned real properties, neglected buildings or vacant parcels.**

25

The responsible party for abandoned real property, a neglected building or vacant parcel shall be required, after written notification from the permits and inspection division, to register such abandoned real property, neglected building or vacant parcel with the permits and inspection division within 30 days of the date of the notice from the permits and inspection division. In the event the responsible party undertakes and completes the necessary maintenance and security measures such that the property no longer requires registration under this division within 30 days of the date of the notice from the permits and inspections division, notifies the building official of the actions taken pursuant to this section and the building official verifies the property no longer meets the requirements for registration, then registration will not be required. Written notification required herein and sent pursuant to section 48-63 shall be deemed good service. If the responsible party resides outside the City of Omaha, such notice shall be sent by regular first class U. S. mail to the last known address of the responsible party and shall be deemed good service upon deposit with the United States Postal Service. Service on a property manager shall be deemed good service on the responsible party.

### Sec. 48-149. Registration fee.

A registration fee of $500.00 per abandoned real property or neglected building shall be collected from the responsible party, at the time of registration, by the permits and inspection division. In the event the city registers or re-registers abandoned real property or a neglected building, the registration fee shall be paid by the city and shall be a cost for which the responsible party is liable and shall become a lien on the premises. Accrual of reimbursable registration fees shall be separate from and in addition to any civil penalties permitted in this chapter. Once registered, a new fee of $500.00 shall be due and payable for each additional 90-day period thereafter, or portion thereof, as though registered for the first time, until the building is removed from the list or such fee is reduced or waived by the building official, as provided for herein. Fees for the initial 90-day period and each additional 90-day period shall become a lien on the premises, as well as a liability of the responsible party.

### Sec. 48-155(c) Exemptions.

The Omaha Municipal Land Bank or non-profit organization with the designated purpose of rehabilitation or restoration of abandoned and vacant properties shall be exempt from the requirements for registration and all associated fees under this division for a period of one year after the receipt or acquisition of any abandoned real property, neglected building or vacant parcel. At such time as the Omaha Municipal Land Bank or non-profit organization ceases to be exempt under this section, the entity shall be required to comply with this division in the same manner as any other responsible party.

26

**Sec. 48-156. Registration penalty; lien on property; assessment process.**

(a) In addition to reimbursing the city for all registration fees paid by the city, any responsible party who fails to timely register abandoned real property or a neglected building, as required by this chapter, shall be liable for a civil penalty of $500.00.

(b) Each civil penalty herein shall automatically renew for an additional 90 days, unless the abandoned real property or neglected building is properly registered and the current and any outstanding fee(s) is paid, as required by this division, or is removed from the registration list as set forth in this division.

(c) If a building continues to meet the definition of abandoned real property or a neglected building for a period of more than 90 calendar days after notice is given, or has been registered, and the owner fails or refuses to register or re-register the abandoned real property or neglected building after the initial registration expires, or if the city has not been reimbursed for any portion of registration fees paid by the city, or an assessed civil penalty is not paid, the building official shall continue to assess a penalty of $500.00 for each 90-calendar-day period, or portion thereof, the abandoned real property or neglected building continues to be unregistered or the registration fees or civil penalties are not paid. At no time shall the amount of unreimbursed registration fees, civil penalties, and assessments exceed $4,000.00 per property or structure in a calendar year, but shall be cumulative in following years. The building official, upon approval by the property maintenance appeals board, may reduce, waive, or stay the imposition of a civil penalty herein for good cause shown by the responsible party in efforts to comply with this section or an approved plan.

(d) All registration fee reimbursements and civil penalties assessed shall be payable directly to permits and inspection division.

(e) The responsible party for the property at the time any notice given pursuant to section 48-148(a) is issued shall be personally liable for all unreimbursed registration fees and unpaid civil penalties. Any unreimbursed fees and penalties shall also be a lien on any real property upon which the abandoned real property or neglected building is wholly or partially located, from the date of assessment of fees and civil penalties. Interest as allowed by applicable Nebraska law shall also accrue. In the event any responsible party fails to pay the fee or penalty required herein, the city may assess such penalty upon the property in the same manner as special assessments, or the city may sue any such person or persons in any court of competent jurisdiction for the amount of the fee or penalty due

27

and payable under the terms and provisions of this division, and may recover a judgment against such person or persons for the amount so due, together with interest.

(f) The building official shall develop policies and procedures for the implementation of this penalty.

**Sec. 48-158(a). Removal from registration list.**

(a) Abandoned real property or a neglected building shall be removed from the registration list and exempted from the requirements of this division by the building official upon such abandoned real property or neglected building meeting one or more of the following:

> (1) Achieving compliance with all health and safety standards set forth in chapter 48 of the Code and all registration fees and penalties have been paid in full.
> (2) Removal or demolition contracted and paid for by the responsible party.
> (3) Removal or demolition by the City of Omaha.
> (4) Discharge of assessed registration fees and penalties and/or liens upon the property through a foreclosure or other legal process.

**Sec. 48-158(d). Removal from registration list.**

The building official may remove abandoned real property or a neglected building from the list or exempt abandoned real property or neglected building from the requirements of this division in the event the building official determines that the interests of the city and the purpose of this ordinance are best served by removal or exemption. Such a finding or determination shall be in writing and approved by the city law department before becoming effective. All such findings or determinations shall be recorded with the city clerk.

**Sec. 48-161. Criminal violations; penalties.**

Any responsible party upon whom a duty is placed by the provisions of this division who shall fail, neglect, or refuse to perform such duty, or who shall violate a provision of this title shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not to exceed $500.00 or be imprisoned in the county jail for a period not to exceed six months, or both, except that each person so convicted shall be fined in a sum of not less than $200.00 for the first offense, not less than $300.00 for a second offense, and not less than $400.00 for the third offense and each offense thereafter. The penalty herein provided shall be cumulative with and in addition to the revocation, cancellation, or

forfeiture of any license, permit, or right elsewhere provided for or as
provided by law. Each day that a violation of this title continues shall
constitute a separate and distinct offense and shall be punishable as such.

96.     Section 48-145 is vague and ambiguous, fails to provide property owners with sufficient

notice of their basic obligations under law, fails to inform property owners of what the

City commands or forbids, does not set forth adequate standards to prevent arbitrary

enforcement and, in fact, permits arbitrary enforcement, illegally and improperly

delegates the authority to make housing law, including in violation of Article II, § 1 of

the Nebraska Constitution, provides individuals with unwarranted and unfettered

discretion to determine whether a violation of law occurs, does not convey sufficiently

definite warning as to the proscribed conduct when measured by common understanding

or practice, affords inadequate due process, expressly authorizes trespass, warrantless

searches, and seizures in violation of the Fourth Amendment to the United States

Constitution and Article I, § 7 of the Nebraska Constitution, and permits taking of private

property without compensation in violation of the Fifth Amendment to the United States

Constitution and Article I, § 21 of the Nebraska Constitution.

97.     Section 48-148(a) is under-inclusive and over-inclusive, serves no legitimate interest or

valid purpose, is vague and ambiguous, fails to provide property owners with sufficient

notice of their basic obligations under law, fails to inform property owners of what the

City commands or forbids, does not set forth adequate standards to prevent arbitrary

enforcement and, in fact, permits and has led to arbitrary enforcement, illegally and

improperly delegates the authority to make housing law, including in violation of Article

II, § 1 of the Nebraska Constitution, provides individuals with unwarranted and

unfettered discretion to determine whether a violation of law occurs, does not convey

sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice, affords inadequate due process, eliminates due process and other Constitutional rights, eliminates rights to a jury, deprives property owners of the presumption of innocence, shifts the burden of proof from the City to property owners in matters where the penalties could include loss of liberty and forfeiture or seizure of property, forces property owners, and others, to give evidence against themselves in violation of the Fifth Amendment to the United States Constitution and Article I, § 12 of the Nebraska Constitution, and allows an indefinite taking of private property without compensation.

98.   Section 48-149 serves no legitimate interest or valid purpose, is punitive, arbitrary, and excessive, affords inadequate due process, eliminates due process and other Constitutional rights, eliminates rights to a jury, deprives property owners of the presumption of innocence, shifts the burden of proof from the City to property owners in matters where the penalties could include loss of liberty and forfeiture or seizure of property, forces property owners, and others, to give evidence against themselves in violation of the Fifth Amendment to the United States Constitution and Article I, § 12 of the Nebraska Constitution, and allows an indefinite taking and/or seizure of private property without compensation.

99.   Section 48-155(c) is arbitrary, under-inclusive, serves no legitimate interest or valid purpose, and violates the equal protection and due process rights of Plaintiffs, and other members of the class.

100.  Sections 48-156(a) – (f) and 48-158(a) serve no legitimate interest or valid purpose, are punitive, arbitrary, and excessive, afford inadequate due process, eliminate due process

and other Constitutional rights, deprive property owners of the presumption of innocence, shift the burden of proof from the City to property owners in matters where the penalties could include loss of liberty and forfeiture or seizure of property, force property owners, and others, to give evidence against themselves in violation of the Fifth Amendment to the United States Constitution and Article I, § 12 of the Nebraska Constitution, are vague and ambiguous, fail to provide property owners with sufficient notice of their basic obligations under law, fail to inform property owners of what the City commands or forbids, do not set forth adequate standards to prevent arbitrary enforcement and, in fact, permit arbitrary enforcement, illegally and improperly delegate the authority to make housing law, including in violation of Article II, § 1 of the Nebraska Constitution, provide individuals with unwarranted and unfettered discretion to determine whether a violation of law occurs, do not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice, and allow an indefinite taking and/or seizure of private property without compensation.

101.   Section 48-158(d) is arbitrary, under-inclusive, serves no legitimate interest or valid purpose, violates the equal protection and due process rights of Plaintiffs and other members of the class, is vague and ambiguous, fails to provide property owners with sufficient notice of their basic obligations under law, fails to inform property owners of what the City commands or forbids, does not set forth adequate standards to prevent arbitrary enforcement and, in fact, permits arbitrary enforcement, illegally and improperly delegates the authority to make housing law, including in violation of Article II, § 1 of the Nebraska Constitution, and provides individuals with unwarranted and unfettered discretion to determine whether a violation of law occurs.

31

102.   Section 48-161 serves no legitimate interest or valid purpose, is punitive, arbitrary, and

excessive, affords inadequate due process, eliminates due process and other

Constitutional rights, is vague and ambiguous, fails to provide property owners with

sufficient notice of their basic obligations under law, fails to inform property owners of

what the City commands or forbids, does not set forth adequate standards to prevent

arbitrary enforcement and, in fact, permits arbitrary enforcement, illegally and

improperly delegates the authority to make housing law, including in violation of Article

II, § 1 of the Nebraska Constitution, provides individuals with unwarranted and

unfettered discretion to determine whether a violation of law occurs, and does not convey

sufficiently definite warning as to the proscribed conduct when measured by common

understanding or practice.

103.   Section 48-161 further seeks to reinstate and expand the former version of § 48-54 that

was amended and/or eliminated by the Consent Decree, which read:

> Any person who shall violate a provision of this code, or fail to comply
> therewith, or with any requirements thereof, may be prosecuted and be
> subject to the penalties set out in section 1-10 of this Code. ***Each day that
> a violation continues after due notice has been served shall be deemed a
> separate offense***.  (Class Action Suit at Doc. # 35-2, Pg. 11) (emphasis
> added).

**SIXTH CLAIM FOR RELIEF: VIOLATION OF PROCEDURAL DUE PROCESS**

104.   Plaintiffs incorporate the foregoing allegations by reference.

105.   In creating, adopting, enforcing, and acting under the guise of the VAPO, the Defendants

have and will continue to deprive the Plaintiffs, and other class members, of due process,

notice, safeguards, protections, rights, privileges, and opportunities afforded to them by

the Omaha Municipal Code, the United States and Nebraska Constitutions, the City's

own Policies and Procedures, and the Consent Decree.

106.    As a direct and proximate result of the Defendants' actions, Plaintiffs, and other members

of the class, have suffered and will continue to suffer injuries and damages, including

those mentioned elsewhere in this Complaint.

### SEVENTH CLAIM FOR RELIEF: UNLAWFUL TAKING AND DAMAGE TO PROPERTY

107.    Plaintiffs incorporate the foregoing allegations by reference.

108.    The Fifth Amendment to the Constitution of the United States guarantees that:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

109.    Article I, § 21 of the Nebraska Constitution guarantees that:

> The property of no person shall be taken or damaged for public use without just compensation therefor.

110.    The City has damaged and effectively taken the property of Lee, and other members of

the class, by designating them under the VAPO and/or placing them on the VAPO

registry.

111.    The City possesses the power of eminent domain.

112.    The City has failed to institute condemnation proceedings and, in fact, failed to provide

lawful and adequate notice, warning, or opportunity to cure prior to interfering with the

properties of Lee, and other members of the class, through the VAPO.

113.    The City's actions constitute an effective and inverse taking and damage to the real

property rights of Lee, and other members of the class, for which no compensation has

been provided.

33

114.    The City failed to follow any of the procedures or provide any of the benefits or
assistance mandated by the Uniform Relocation Assistance and Real Property
Acquisition Policies for Federal and Federally Assisted Programs, codified beginning at
42 U.S.C. § 4601.

115.    Under both the United States and Nebraska Constitutions, Lee, and other members of the
class, are entitled to the fair market value of the diminution of their properties at their
highest and best use, plus interest, costs, attorney fees, and all relocation and other
benefits afforded by the Uniform Relocation Assistance and Real Property Acquisition
Policies for Federal and Federally Assisted Programs Act.

## DEMAND FOR JURY TRIAL

116.    Plaintiffs hereby demand trial by jury on all claims so triable.

117.    Pursuant to United States District Court of Nebraska Local Rule 40.1(b), Plaintiffs
request the trial be held in Omaha, Nebraska.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the class they seek to represent,
respectfully pray for the following:

A)  An order holding Defendants in contempt and imposing remedial and coercive
sanctions upon them.

B)  A judgment against Defendants, jointly and severally, for all past, present, and future
general, special, punitive, and statutory damages in an amount to be determined at
trial, plus pre- and post-judgment interest.

C)  A judgment against Defendant the City of Omaha for restitution of all sums, fees,
taxes, penalties, and other amounts illegally charged and collected pursuant to the

VAPO, with interest at the rate of 12% from December 2, 2015.

D) A declaratory judgment declaring the VAPO unconstitutional, both on its face and as applied to Plaintiffs and other class members.

E) An order, under 42 U.S.C. § 3613(c)(1), restraining Defendants from further engaging in discriminatory housing practices.

F) Attorney fees, appraisal fees, expert fees, and costs as may be allowed by law, including 42 U.S.C. § 3613(c)(2), 42 U.S.C. § 1988, and F.R.C.P. 23(h).

G) All such further relief as may be necessary, just, or appropriate under the circumstances.

Respectfully Submitted,

METROPOLITAN OMAHA PROPERTY OWNERS ASSOCIATION, INC. and ROOSEVELT LEE, Plaintiffs,

By: /s/ Jason M. Bruno
    Jason M. Bruno, NE #23062
    Robert S Sherrets, NE #24791
    SHERRETS BRUNO & VOGT LLC
    60 Regency Parkway Drive, Suite 200
    Omaha, NE 68114
    Tele: (402) 390-1112
    Fax: (402) 390-1163
    law@sherrets.com
    ATTORNEY FOR PLAINTIFFS