| | |
|---|---|
| **METROPOLITAN OMAHA PROPERTY OWNERS ASSOCIATION, INC., and ROOSEVELT LEE,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**THE CITY OF OMAHA, JEAN STOTHERT, in her individual and official capacity; JAY DAVIS, in his individual and official capacity; PAUL KRATZ, in his individual and official capacity; JANE DOES, and JOHN DOES,**<br><br>**Defendants.** | **8:19CV341**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 14. For the following reasons, the Motion will be granted in part.

## BACKGROUND

The following facts are those alleged in the Complaint, ECF No. 1, and are assumed true for purposes of this Motion.

Plaintiff Metropolitan Omaha Property Owners Association, Inc. (MOPOA) is a Nebraska nonprofit corporation. MOPOA consists of approximately 1,000 individuals and entities that own and operate real property located in Omaha, Nebraska.

Defendants include the City of Omaha and a list of city officials, including: Mayor Jean Stothert, Superintendent of Permits and Inspections Jay Davis, City Attorney Paul Kratz, and unknown Jane and John Does who Plaintiffs anticipate are agents or representatives of the City.

This action arises out of an earlier class action lawsuit in this Court, in which MOPOA brought a number of claims regarding the City's housing code. The parties settled that action, and the Court adopted the terms of the settlement agreement through a consent decree. Consent Decree, *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha* (*MOPOA I*), No. 8:13-cv-230-LSC-FG3 (D. Neb. Mar. 4, 2015), ECF No. 36 (incorporating the terms of the Settlement Agreement & Release, ECF No. 35-2). The parties to the Consent Decree agreed to certain amendments of the Omaha Municipal Code and established standard operating procedures which were to serve as the official policies of the City's Permits and Inspection Division.

On November 17, 2015, the City adopted the Vacant and Abandoned Property Ordinance (VAPO), Omaha, Neb., Code §§ 48-141 to 48-162. The VAPO went into effect December 2, 2015. The stated purpose of the VAPO is to "establish a mechanism to protect residential and non-residential neighborhoods from becoming blighted through the lack of maintenance and security of abandoned properties . . . ." Omaha, Neb., Code § 48-142. The VAPO authorizes the Superintendent of the City's Permits and Inspection Division to investigate properties that may be abandoned, vacant, or neglected, as defined by the VAPO,[1] and to notify the responsible party[2] of its obligation to register the

---

[1] Under the VAPO, for a property to be considered abandoned, vacant, or neglected it must meet certain criteria and exhibit "evidence of vacancy," such as:

(1) [o]vergrown or dead vegetation . . . ; (2) [a]ccumulation of abandoned personal property, trash or waste; (3) [v]isible deterioration or lack of maintenance of any building or structure on the property; (4) [g]raffiti on or other defacement of any building or structures on the property; or (5) [a]ny other condition or circumstance reasonably indicating that the property is not occupied."

Omaha, Neb., Code § 48-146(g).

[2] The responsible party is the owner of the property or, in some circumstances, the owner or holder of an instrument encumbering the property. Omaha, Neb., Code § 48-146(m).

property under the VAPO.  Omaha, Neb., Code §§ 48-145, 48-148.  A responsible party must complete the necessary maintenance and security measures, such that the property no longer requires registration, within thirty days of receiving notice from the City or register the property pursuant to the VAPO.  Omaha, Neb., Code § 48-148.  A registration fee of $500, payable by the responsible party, is due at the time of registration as well as an additional $500 for each 90-day period during which the property is registered. Omaha, Neb., Code § 48-149.

Plaintiff Roosevelt Lee is an African-American male who resides in and owns real property in Omaha, Nebraska.  Lee is a member of MOPOA.  Lee owns rental property in Omaha.  In or around 2018, Lee's property was registered as abandoned and/or vacant under the VAPO.  The City did not provide Lee with notice prior to his registration, give him an opportunity to cure, or permit him to appeal or contest the registration.

On August 6, 2019, Plaintiffs brought this action, on behalf of themselves and a putative class, alleging seven claims for relief.  Compl., ECF No. 1.  On September 27, 2019, Defendants filed a Motion to Dismiss, ECF No. 14, seeking dismissal of Plaintiffs' action with prejudice.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Plaintiffs allege, on behalf of themselves and a putative class, seven claims for relief arising out of the City's enactment of the VAPO. Plaintiffs generally allege that these claims are brought under 42 U.S.C. §§ 1981–1983, 1985, 3613; the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; and the Court's inherent power to enforce its own orders, judgments, and decrees. Plaintiffs also generally allege that Defendants should be held liable both in their individual and official capacities as co-conspirators. Plaintiffs allege the VAPO constitutes a breach of the Consent Decree, is an unlawful and unconstitutional tax, violates the Fair Housing Act, is unconstitutional, deprives Plaintiffs of procedural due process, and constitutes an unlawful taking without just compensation.

Defendants argue that the Complaint does not give sufficient notice to the individual plaintiffs of the claims against them. Defendants further argue that Plaintiffs allege only conclusory legal allegations and bring every conceivable claim against every conceivable defendant in a "kitchen sink" or "shotgun" complaint.

## I.      "Kitchen Sink" Complaint

Rule 8 of the Federal Rules of Civil Procedure commands that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "District courts in the Eighth Circuit, including this Court, have 'criticized the filing of "kitchen sink" or "shotgun" complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant.'" *Harrington v. Strong*, 363 F. Supp. 3d 984, 993 n.5 (D. Neb. 2019) (quoting *Gurman v. Metro. Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011)). "It is the plaintiff's burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research

the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Id.* (quoting *Gurman*, 842 F. Supp. 2d at 1153).

A complaint must also, "at a minimum be sufficient to give the defendant notice of the claim." *Tatum v. Iowa*, 822 F.2d 808, 810 (8th Cir. 1987) (per curiam) (affirming district court's dismissal of a complaint for plaintiff's failure to relate with specificity how each of the defendants were involved in his claim (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957))). Defendants argue the Complaint fails to provide them with adequate notice to respond to the claims against them.

*A. Claims Against Individual Defendants*

"Claims against individuals in their official capacities are equivalent to claims against the entity for which they work . . . . Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties . . . ." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 24–27 (1991)); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))).

Plaintiffs allege generally that Mayor Stothert, Superintendent Davis, City Attorney Kratz, and unknown Jane and John Does should be held liable in their official and individual capacities. Claims against the individual defendants in their official capacities are redundant because the City of Omaha is a defendant in this case. The Plaintiffs do not allege which actions by which Defendants relate to their claims. The Complaint does

not give Defendants sufficient notice or allow them to readily respond to the claims against them. Therefore, all claims are dismissed, without prejudice, as against the individual Defendants.

*B. Count III – VAPO is Unlawful and Unconstitutional*

Count III alleges the VAPO is unlawful and unconstitutional because it violates the Consent Decree, unjustly enriches the City, is discriminatory toward, and has a disparate impact on, minorities, and violates the due process clauses of the Fifth and Fourteenth Amendments. To the extent these arguments may state a cause of action, they are addressed by Plaintiffs' other claims. Count I addresses Plaintiffs' allegations that the VAPO violates the Consent Decree. Count II addresses Plaintiffs' allegations that the VAPO is an unlawful and unconstitutional tax. Count IV addresses Plaintiffs' allegations that the VAPO is discriminatory toward, and has a disparate impact on, minorities in violation of the Fair Housing Act. Count VI addresses Plaintiffs' allegations that the VAPO deprives Plaintiffs of due process. Count III contains no factual allegations, nor does it contain short and plain statements as to Plaintiffs' theory of each claim. Therefore, Count III will be dismissed, without prejudice.

*C. Count V – VAPO is Unconstitutional*

Count V of the Complaint alleges the VAPO is unconstitutional in its entirety, and that eight sections are unconstitutional for numerous reasons. Plaintiffs list the full text of each section alleged to be unconstitutional, followed by a list of reasons each section is unconstitutional. For example, the Complaint alleges:

> Section 48-145 is vague and ambiguous, fails to provide property owners with sufficient notice of their basic obligations under law, fails to inform property owners of what the City commands or forbids, does not set forth adequate standards to prevent arbitrary enforcement and, in fact, permits

arbitrary enforcement, illegally and improperly delegates the authority to make housing law, including in violation of Article II, § 1 of the Nebraska Constitution, provides individuals with unwarranted and unfettered discretion to determine whether a violation of law occurs, does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice, affords inadequate due process, expressly authorizes trespass, warrantless searches, and seizures in violation of the Fourth Amendment to the United States Constitution and Article I, § 21 of the Nebraska Constitution, and permits taking of private property without compensation in violation of the Fifth Amendment to the United States Constitution and Article I, § 21 of the Nebraska Constitution.

Compl. ¶ 96, ECF No. 1. Plaintiffs argue that because of the class nature of the complaint, "specific factual allegations would create a risk of inconsistent or varying adjudications with respect to individual class members . . . ." Pls.' Br. 25, ECF No. 18 (internal quotations omitted). However, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado*, 804 F.3d at 917 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs have not done so in Count V, and it will be dismissed without prejudice.

## II. Count I: Application for Contempt/Breach of Consent Decree

Count I of the Complaint seeks an order from the Court finding Defendants in contempt for breaching the Consent Decree. Defendants argue Plaintiffs seek an improper method of enforcing the Consent Decree; lack standing to enforce the Consent Decree; and fail to plead a plausible breach of the Consent Decree.

### A. Enforcement Method of a Consent Decree

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). However, when a case is dismissed by stipulation under Rule 41(a)(1)(A)(ii), the court may enter an order dismissing the case that embodies the terms of the settlement agreement, and the court may retain jurisdiction

to enforce those terms if the parties agree.  *Id.* at 381–82.  The Consent Decree stated that "[t]he Court retain[ed] continuing jurisdiction for a period of two years . . . [but t]he two year limitation on this Court's continuing jurisdiction shall in no way prohibit either Party from otherwise seeking to enforce or modify the Consent Decree if and when needed after the expiration of two years."  Consent Decree, *MOPOA I*, ECF No. 36.  Therefore, the Court has jurisdiction to enforce the terms of the Consent Decree.

The proper method to seek enforcement of a consent decree is through a motion for contempt.  *Hawkins v. Comm'r of Dep't of Health and Human Servs. for N.H.*, 665 F.3d 25, 30 (1st Cir. 2012) ("[I]t is well settled in the law that a motion for contempt is the proper way to seek enforcement of a consent decree." (citing *Johnson v. City of Tulsa*, 489 F.3d 1089, 1103–04 (10th Cir. 2007); *Whitehouse v. LaRoche*, 277 F.3d 568, 578 n.6 (1st Cir. 2002); *NLRB v. Ironworkers Local 433*, 169 F.3d 1217, 1219 (9th Cir. 1999); *Martel v. Fridovich*, 14 F.3d 1, 3 n.4 (1st Cir. 1993); *United States v. O'Rourke*, 943 F.2d 180, 189 (2d Cir. 1991); *DeGidio v. Pung*, 920 F.2d 525, 534 (8th Cir. 1990); *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986); *Brewster v. Dukakis*, 675 F.2d 1, 3 (1st Cir. 1982))).

Plaintiffs also refer to the Consent Decree elsewhere in the Complaint and seem to argue that a violation of the Consent Decree somehow implicates § 1983.  However, Plaintiffs may not enforce the Consent Decree through § 1983.  *DeGidio*, 920 F.2d at 534 (noting that consent decrees are negotiated by the parties and may go beyond constitutional requirements and allowing a claim under § 1983 would discourage such arrangements (citing *Green*, 788 F.2d 1116)).  Therefore, Plaintiffs are limited to enforcing the Consent Decree through the motion for contempt.

B.  Standing

In order to establish standing, a plaintiff must show "'injury in fact,' 'a causal connection between the injury and the conduct complained of,' and a likelihood 'the injury will be redressed by a favorable decision.'" *Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To establish standing, Plaintiffs do not need to show the conduct was illegal. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal . . . .").

MOPOA negotiated the terms of the Consent Decree in exchange for dismissing *MOPOA I*. Lee, a member of MOPOA and representative of the putative class, has had the VAPO enforced against him. His property was registered under the VAPO as abandoned and/or vacant. Under the VAPO, a responsible party of a registered property incurs a duty to pay $500 to the City or a lien will be imposed on the registered property. Omaha, Neb., Code § 48-149. Therefore, Plaintiffs have alleged standing to assert that Defendants breached the Consent Decree.

### C. Failure to State a Claim

Defendants argue Plaintiffs "do not identify any specific action, conduct or activity taken by the City in violation of the Consent Decree, only blanket assertions that the VAPO itself is a violation." Defs.' Br. 12, ECF No. 15. The Consent Decree arose from a negotiated settlement to a class action lawsuit. Consent Decree, *MOPOA I*, ECF No. 36. In the Consent Decree, the parties agreed to amend provisions of the Omaha Municipal Code regarding nuisances, building code, and property maintenance. Settlement Agreement & Release, *MOPOA I*, ECF No. 35-2 (setting forth terms incorporated by the Consent Decree). Plaintiffs allege that specific provisions of the

VAPO are contrary to those in the Consent Decree. Compl. ¶ 39, ECF No. 1. Plaintiffs also allege that the VAPO creates a set of new ordinances that avoid the standards imposed by the Consent Decree.

As stated above, these provisions have been enforced against Lee and other members of MOPOA. Lee's property has been registered as abandoned and/or vacant, and as a result he has incurred an obligation to pay $500 or suffer a lien on the property. Therefore, Count I of the Complaint states a plausible cause of action for breach of the Consent Decree.

## III. Count II: Unlawful and Unconstitutional Tax

Count II of the Complaint alleges the VAPO is an unconstitutional tax under the Nebraska Constitution. Plaintiffs allege the VAPO is, in effect, a tax on abandoned, vacant, or neglected properties the City was without power to enact.

In Nebraska,

> [t]he well-settled rule . . . is that a municipal corporation possesses, and can exercise, the following powers and no others: first, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

*Prof'l Firefighters of Omaha, Local 385 v. City of Omaha*, 498 N.W.2d 325, 331 (Neb. 1993) (citing *Giger v. City of Omaha*, 442 N.W.2d 182 (Neb. 1989); *Briar West, Inc. v. City of Lincoln*, 291 N.W.2d 730 (Neb. 1980); *Chase v. Cty. of Douglas*, 241 N.W.2d 334 (Neb. 1976); *Jacobs v. City of Omaha*, 147 N.W.2d 160 (Neb. 1966); *Christensen v. City of Fremont*, 63 N.W. 364 (Neb. 1895)). This includes the power of taxation. *See Anthony, Inc. v. City of Omaha*, 813 N.W.2d 467, 474 (Neb. 2012) ("Municipal corporations have no power to impose taxes except such as is expressly conferred by or necessarily implied from statute." (citing *Caldwell v. City of Lincoln*, 27 N.W. 647 (Neb. 1886))).

Defendants argue that the Nebraska Legislature implicitly endorsed the VAPO when it passed the Vacant Property Registration Act (VPRA), Neb. Rev. Stat. §§ 19-5401 to 19-5408 on March 21, 2018. The VPRA "provid[es] authority for municipalities to enact vacant property registration ordinances." Neb. Rev. Stat. § 19-5403. However, the VPRA explicitly applies only to villages and cities of the first or second class. Neb. Rev. Stat. §19-5404. Omaha is a city of the metropolitan class. Neb. Rev. Stat. § 14-101.[3]

Defendants argue the Legislature could have preempted the City in the VPRA but chose not to. The Nebraska Supreme Court has not allowed for such implied grants of authority. *See Prof'l Firefighters*, 498 N.W.2d at 331 (requiring that grants of power from the Legislature be explicit or incident to powers explicitly granted). Therefore, Plaintiffs have plausibly alleged the VAPO is an unconstitutional or unlawful tax.

## IV. Count IV: Fair Housing Act

Count IV of the Complaint alleges that Defendants violated the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.*

The FHA states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Plaintiffs allege disparate treatment and disparate impact violations of the FHA.

---

[3] The Court may consider outside items subject to judicial notice such as the federal decennial census and most recent revised certified count by the United States Bureau of the Census to determine the population of Omaha is greater than three hundred thousand inhabitants. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012). Therefore, Omaha is a city of the metropolitan class under Neb. Rev. Stat. § 14-101.

*A. Disparate Treatment*

To analyze a disparate treatment cause of action under the FHA, the Eighth Circuit applies the "same framework as Title VII disparate-treatment claims." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (citing *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926 (8th Cir. 1993)). The question the Court must ask is "did the defendant(s) treat the plaintiff(s) less favorably than others based on their race, color, religion, sex or national origin." *Id.* Plaintiffs must plausibly allege that the City had a discriminatory purpose. *See id.* ("Proof of discriminatory purpose is crucial for a disparate treatment claim." (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977))). Discriminatory purpose may be shown by direct or circumstantial evidence. *Combs v. Cordish Cos., Inc.*, 862 F.3d 671, 681 (8th Cir. 2017).

Plaintiffs do not allege any direct evidence of discriminatory purpose. Plaintiffs attempt to show circumstantial evidence of Defendants' discriminatory intent by alleging that Defendants recently evicted approximately 500 Burmese refugee tenants. Compl. ¶ 91, ECF No. 1. This allegation is not related to the VAPO, nor does it permit a plausible inference that Defendants had a discriminatory purpose in enacting the VAPO. Therefore, Plaintiffs do not allege a plausible disparate treatment claim under the FHA.

*B. Disparate Impact*

A disparate impact claim under the FHA may be brought to challenge "practices that are fair in form, but discriminatory in operation." *Saunders v. Farmers Ins. Exch.*, 537 F.3d 961, 964 (8th Cir. 2008) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). In order to establish a prima facie case of disparate impact under the FHA, a plaintiff must show "that the objected-to action[s] result[ed] in . . . a disparate impact upon

protected classes compared to a relevant population." *Gallagher*, 619 F.3d at 833 (quoting *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 417 F.3d 898, 902 (8th Cir. 2005)). In other words, a plaintiff "must show a facially neutral policy ha[d] a significant adverse impact on members of a protected minority group." *Id.* (quoting *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 883 (8th Cir. 2003)). A plaintiff is "not required to show that the policy or practice was formulated with discriminatory intent." *Id.* (citing *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934–35 (2d Cir. 1988), *aff'd*, 488 U.S. 15 (1988)).

Since *Gallagher*, the Supreme Court has instructed the lower courts to cautiously examine whether plaintiffs have stated prima facie cases of disparate impact under the FHA and to prevent "allowing 'the specter of disparate-impact litigation' to deter governmental authorities 'from achieving legitimate objectives.'" *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1110 (8th Cir. 2017) (quoting *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2524 (2015)).

Plaintiffs allege that "Defendants' actions and practices unquestionably have had a disparate impact upon refugees and minority tenants compared to the relevant Omaha population." Compl. ¶ 92, ECF No. 1. However, Plaintiffs do not allege what that disparate impact was nor how it was caused by the VAPO. Therefore, Plaintiffs do not allege a prima facie disparate-impact claim under the FHA. Count IV will be dismissed in its entirety, without prejudice.

## V.    Count VI: Violation of Procedural Due Process

To demonstrate a violation of procedural due process, Plaintiffs must "show a deprivation of life, liberty, or property without sufficient process." *Hughes v. City of Cedar*

*Rapids*, 840 F.3d 987, 994 (8th Cir. 2016) (citing *Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004)).  In the Eighth Circuit, courts balance three factors to determine what process is due:

> 1) the nature and weight of the private interest affected by the challenged official action; 2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and 3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought.

*Id.* (quoting *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014); citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

Plaintiffs allege the VAPO deprives them of procedural due process because it empowers the City to "encumber real property, place that real property in an indefinite encumbered status, and impose a $500 initial fee, along with an additional $500 fee every 90 days thereafter . . . without the City having to establish probable cause or face any determination by a court of law."  Pls.' Br. 25–26, ECF No. 18.[4]

*A. Facial Due Process Violation*

Plaintiffs do not allege well-pleaded facts to demonstrate how the procedures under the VAPO may lead to a risk of erroneous deprivation.  The VAPO requires that thirty-day notice be given to a responsible party prior to the property being registered under the VAPO.  Omaha, Neb., Code § 48-148(a) (requiring 30-day notice as defined by Omaha, Neb., Code § 48-62).  A responsible party may appeal the initial decision by the building official to the property maintenance appeals board, during which time the

---

[4] Plaintiffs conclude in their brief that these allegations establish a violation of procedural and substantive due process.  The Complaint specifically alleges only a procedural due process violation and the Court will not address the substantive due process allegation.

enforcement of the VAPO is stayed. Omaha, Neb., Code §§ 48-162; 48-102. Plaintiffs do not address these procedures in their Complaint. Therefore, Count VI will be dismissed to the extent it alleges the VAPO, on its face, violates due process.

### B. As Applied Due Process Violation

The Supreme Court has stated that the central meaning of procedural due process is that "parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Lind v. Midland Funding, L.LC.*, 688 F.3d 402, 405–06 (8th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). Plaintiffs allege that Lee was deprived of procedural due process. Accepting Plaintiffs' well-pleaded facts as true, the City registered Lee's property under the VAPO without providing Lee with notice, thereby depriving him of his right to be heard. Therefore, Count VI plausibly states that the City deprived Lee of procedural due process by registering his property without providing him with notice.

## VI.    Count VII: Unlawful Taking and Damage to Property

Plaintiffs' final claim for relief alleges that the VAPO, and the City's enforcement thereof, constitutes an unlawful taking under the Fifth Amendment of the United States Constitution and Article I, section 21 of the Nebraska Constitution.

### A. Federal Takings Claim

"The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (quoting U.S. Const. amend. V). The touchstone of a regulatory taking is that it is "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron*

*U.S.A. Inc.*, 544 U.S. 528, 539 (2005).  The inquiries reflected in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), and *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), were all focused on identifying whether regulatory actions rose to the level of a classic taking.  *Lingle*, 544 U.S. at 539.

Plaintiffs do not allege that they suffered a "permanent physical invasion" as was the case in *Loretto*, 458 U.S. 419.  Plaintiffs also do not allege that the VAPO deprives them of "all economically beneficial uses" of their land as was the case in *Lucas*, 505 U.S. 1003.  Therefore, Plaintiffs must show that the VAPO constitutes a regulatory taking that "goes too far" under *Penn Central*, 438 U.S. 104.

Courts in the Eighth Circuit view takings claims under *Penn Central* through an "ad hoc, factual inquiry," the factors of which are: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct, investment-backed expectations; and (3) the character of the government regulation." *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 441 (8th Cir. 2007) (quoting *Outdoor Graphics, Inc. v. City of Burlington*, 103 F.3d 690, 694 (8th Cir. 1996)).

The economic impact of the VAPO is $500 when registered, followed by a $500 fee for every 90 days the property remains registered.  If the $500 fee is not paid, it becomes a lien on the property which could lead to foreclosure.  Plaintiffs also argue that registration under the VAPO diminishes the value of property.  However, "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993) (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 384 (1926)

(approximately 75 percent diminution in value); *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (92.5 percent diminution in value)).

Plaintiffs do not allege in what way the VAPO interferes with their investment-backed expectations.  As the Supreme Court stated in *Penn Central*, courts should not only focus on prohibited uses, but also "the uses the regulations permit."  *Penn Central*, 438 U.S. at 131.  The only "use" prohibited by the VAPO is keeping property abandoned, vacant, or neglected as defined by the statute.  Omaha, Neb., Code § 48-146.  The VAPO does not prohibit Plaintiffs from using property in any other manner.

Finally, courts look to the character of the government regulation.  The state police power is distinct from the power of eminent domain.[5]  *See Kelo v. City of New London*, 545 U.S. 469, 519 (Thomas, J., dissenting).  Historically, regulatory power, "such as the power to abate a nuisance, required no compensation whatsoever," *id.* (citing *Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887)), whereas the "takings power . . . has always required compensation."  *Id.*  "[L]and-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.'"  *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834 (1987) (quoting *Agins v. Tiburon*, 447 U.S. 255, 260 (1980)).  The City has determined abandoned, vacant, and neglected properties constitute a nuisance and has implemented a zoning ordinance to address them.

Accepting as true Plaintiffs' allegation that the VAPO will diminish the property value of registered properties, this is insufficient to find that the VAPO constitutes a taking

---

[5] The question as to whether the State of Nebraska has designated such power to the City of Omaha in this case is addressed above regarding Count II.

under the Fifth Amendment.  The VAPO does not interfere with Plaintiffs' investment-backed expectations, and the character of the regulation is to abate a nuisance, not to exercise the power of eminent domain.  Therefore, Count VII fails to state a taking claim under the Fifth Amendment to the United States Constitution.

### B. State Taking Claim

The Nebraska Constitution states that "[t]he property of no person shall be taken or damaged for public use without just compensation therefor."  Neb. Const. art. I, § 21.  The inclusion of the words "or damaged" in the Nebraska Constitution "broadens the entitlement for just compensation beyond property that is actually 'taken' by the governmental entity and includes compensation for property that is damaged in the sense that the market value of the property has been diminished even if the property is not actually taken." *Russell v. Franklin Cty.*, 934 N.W.2d 517, 522 (Neb. Ct. App. 2019) (citing *Henderson v. City of Columbus*, 827 N.W.2d 486 (Neb. 2013)).

However, this does not mean that any governmental action resulting in diminished property values must be accompanied by just compensation—only those resulting from the exercise of eminent domain.  *Strom v. City of Oakland*, 583 N.W.2d 311, 316 (Neb. 1998) (per curiam) (citing *Walkenhorst v. State*, 573 N.W.2d 474 (Neb. 1998); *Pieper v. City of Scottsbluff*, 126 N.W.2d 865 (Neb. 1964)).  To determine whether governmental action is an exercise of eminent domain power or police power, the threshold question is whether the land was taken or damaged for public use.  *Henderson*, 827 N.W.2d at 492.  Plaintiffs do not allege facts to show that the VAPO takes or damages property for public use.  *See Roe v. Nebraska*, 861 F.3d 785, 789 (8th Cir. 2017) ("[Plaintiff] does not allege, however, that his residence or other property was taken or damaged *for public use*.")

(emphasis in original). Therefore, Plaintiffs do not allege a plausible state taking-claim under the Nebraska Constitution and Count VII will be dismissed without prejudice. Accordingly,

IT IS ORDERED:

I.     Defendants' Motion to Dismiss, ECF No. 14, is granted in part;

     a.  All claims against Defendants Jean Stothert, Jay Davis, Paul Kratz, Jane Does, and John Does are dismissed, without prejudice;

     b.  Counts III, IV, V, and VII are dismissed, without prejudice;

     c.  Count VI, to the extent it alleges the VAPO facially deprives Defendants of due process, is dismissed, without prejudice;

II.    Defendants' Motion to Dismiss, ECF No. 14, is otherwise denied; and

III.   The Clerk is directed to amend the caption to remove Defendants Jean Stothert, Jay Davis, Paul Kratz, Jane Does, and John Does.

Dated this 10th day of December, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge